WOODSTOCK HUNT CLUB *et al.*, Plaintiffs-Appellees, v. STEVEN HINDI *et al.*, Defendants (Steven Jay Gross *et al.*, Defendants-Appellants).

Second District   No. 2—98—1327

Opinion filed July 9, 1999.

Richard D. Grossman, of Chicago, for appellant.

Matthew M. Litvak, of Chicago, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Defendants Steven Jay Gross and Carol Gross appeal the trial court's denial of their motion to dissolve a permanent injunction and to dismiss plaintiffs' complaint. For the second time, they ask us to hold that the Hunter Interference Prohibition Act (Act) (720 ILCS 125/0.01 *et seq.* (West 1996)) is unconstitutional. Once again, we decline to do so. We therefore affirm the trial court's order.

Members of the Woodstock Hunt Club (club) pay to hunt on club property. On October 11, 1996, plaintiffs filed a petition for injunctive relief and a complaint for damages, alleging that defendants used various noise-making devices to scare geese away from the club. Plaintiffs alleged that defendants violated the Act by intentionally interfering with club members' ability to hunt. On November 7, 1996, the trial court issued a permanent injunction against Steven and Carol Gross, enjoining them from violating the Act.

Defendants appealed, arguing that the Act prohibited expression that was protected by the first amendment (U.S. Const., amend. I). We disagreed, and we declared that the Act, in its entirety, was constitutional. *Woodstock Hunt Club v. Hindi*, 291 Ill. App. 3d 1051, 1055-56 (1997) (*Woodstock I*).

The supreme court subsequently held that section 2(c) of the Act (720 ILCS 125/2(c) (West 1996)) was unconstitutional. *People v. Sanders*, 182 Ill. 2d 524, 535 (1998). Because the court was not called upon to rule on the constitutionality of the other provisions of the Act, it simply severed section 2(c). *Sanders*, 182 Ill. 2d at 534-35. In a separate opinion, Justice Harrison wrote that the entire statute was unconstitutional and should have been invalidated. *Sanders*, 182 Ill. 2d at 535 (Harrison, J., concurring in part & dissenting in part).

Steven and Carol Gross (the Grosses) moved the trial court to dissolve the permanent injunction and to dismiss plaintiff's complaint, arguing that, in light of *Sanders* and Justice Harrison's opinion in particular, the entire Act was unconstitutional. The court denied the motion and found no just reason to delay the enforcement or appeal of

its order. 155 Ill. 2d R. 304(a). The Grosses timely appealed to this court. None of the other defendants is a party to this appeal.

■ Section 2 of the Act states:

"Any person who performs any of the following is guilty of a Class B misdemeanor:

(a) Interferes with the lawful taking of a wild animal by another with intent to prevent the taking.

(b) Disturbs or engages in an activity that will tend to disturb wild animals, with intent to prevent their lawful taking.

(c) [D]isturbs another person who is engaged in the lawful taking of a wild animal or who is engaged in the process of taking, with intent to dissuade or otherwise prevent the taking.

(d) [E]nters or remains upon public lands, or upon private lands without permission of the owner or his agent or a lessee, with intent to violate this Section." 720 ILCS 125/2 (West 1996).

The Grosses contend, as they did in *Woodstock I*, that this entire section prohibits expression that the first amendment protects. In accordance with the supreme court's decision in *Sanders* and our own opinion in *Woodstock I*, we must again reject their argument.

In *Sanders*, the supreme court explicitly held only that section 2(c) was unconstitutional. However, *obiter dicta* in that opinion strongly indicated that the remainder of the statute was valid. We determine that we are obligated to follow those *dicta*.

■ In general, *obiter dictum*, a remark or opinion uttered by the way, is not binding authority or precedent under the rule of *stare decisis*. However, *obiter dictum* of a court of last resort may be tantamount to a decision and therefore binding in the absence of a contrary decision of that court. *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993).

■ The supreme court stated that section 2(c) of the Act was unconstitutional because it prohibited acts performed "with intent to dissuade," *i.e.*, intent to convey a particular point of view. "Subjecting to criminal liability expression which is made with an intent to dissuade, while failing to threaten punishment for expressions intended to encourage or persuade, constitutes an illegal legislative censure of opinion." *Sanders*, 182 Ill. 2d at 533. Such a content-based restriction is constitutional only if it is justified by a compelling state interest, and the court found no sufficient interest to exist. *Sanders*, 182 Ill. 2d at 530, 533.

The court further stated:

"We note as well that, had the legislature intended to curb conduct without regard to any message conveyed by the conduct, it

could have done so by limiting the criminal *scienter* in section 2(c) to the phrase 'intent to prevent' and no more. Indeed, section 2(a) proscribes 'interferences' with hunting when the interference is motivated by an intent to prevent. 720 ILCS 125/2(a) (West 1996). Thus, the inclusion of a separate subsection adding the words 'intent to dissuade' substantiates our judgment that the legislature intentionally injected the concept of suasion into subsection (c). Section 2(c) is not content-neutral." *Sanders*, 182 Ill. 2d at 533. The court concluded that it would sever section 2(c) to "neutralize a constitutional infirmity without altering any of the remaining prohibitions in the Act." *Sanders*, 182 Ill. 2d at 534-35.

The import of the court's language is clear. Section 2(c) would have been constitutional had it not contained the term "intent to dissuade." Conversely, because the remaining provisions of section 2 do not include that term, they are content-neutral and constitutional. The supreme court's *obiter dicta* compel that conclusion. In the absence of a contrary decision of that court, that conclusion is binding. See *Cates*, 156 Ill. 2d at 80.

Even if the explicit holding of *Sanders* stood alone, however, we would still be bound to hold that the provisions of section 2, other than section 2(c), are constitutional. Although *Sanders* overruled *Woodstock I* as it relates to section 2(c), it left intact the balance of our holding. Therefore, our own precedent continues to dictate that the remainder of the Act is valid.

■We briefly recapitulate the reasoning that we employed in *Woodstock I*. The first amendment generally prevents the government from proscribing speech or expressive conduct because of disapproval of the ideas expressed. Content-based regulations are thus presumptively invalid. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 120 L..Ed. 2d 305, 317, 112 S. Ct. 2538, 2542 (1992). However, the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided that the restrictions (1) are justified without reference to the content of the speech; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 675, 109 S. Ct. 2746, 2753 (1989).

With the exception of section 2(c), the provisions of section 2 of the Act are content-neutral. As we noted in *Woodstock I*, a person may violate them by "shouting 'Fire!', by waving a placard proclaiming 'Hunting is good!' in front of a hunter, or by playing the 1812 Overture on a stereo system," if it is done to prevent the lawful taking of a wild animal. *Woodstock I*, 291 Ill. App. 3d at 1054.

Furthermore, the provisions serve the significant governmental interest in avoiding accidents during a hunt, "a dangerous time when loaded weapons are legally carried." *Woodstock I*, 291 Ill. App. 3d at 1055. They are also narrowly tailored to exclude those who cause an interference or disturbance without the required intent to disrupt a hunt, such as those who operate commercial aircraft. *Woodstock I*, 291 Ill. App. 3d at 1055.

Finally, antihunting advocates retain the ability to express their views at numerous other times and places and in numerous other manners:

> "The Act does not prevent antihunting advocates from trying to dissuade hunters from hunting. It prohibits disturbing a hunter *engaged in the process of taking a wild animal* if the intent of the disturber is to *** prevent the taking of the animal. *** Antihunting advocates may still attempt to convince hunters to stop hunting. However, they may not improperly interfere with hunters during the hunt." (Emphasis in original.) *Woodstock I*, 291 Ill. App. 3d at 1055.

■ On this basis, we concluded that the Act was constitutional. Except as it relates to section 2(c), this reasoning is still sound, and our holding still stands. Therefore, in accordance with *Woodstock I*, as modified by *Sanders*, we conclude that the remaining provisions of the Act are constitutional.

We note that, on December 12, 1997, the legislature gave effect to Public Act 90—555, which substantially altered the provisions at issue here. Pub. Act 90—555, eff. December 12, 1997 (amending 720 ILCS 125/0.01 *et seq.* (West 1996)). Although the Grosses filed their notice of appeal nearly a year after the effective date of Public Act 90—555, they made no argument concerning its constitutionality or its retroactive applicability to this case. Indeed, neither party even brought the amended Act to our attention.

Therefore, we decline to comment on the effect that Public Act 90—555 may have had on the disposition of this appeal. The Grosses requested only a determination of the constitutionality of the Act as it stood when the trial court issued its injunction against them. That statute, with the exception of section 2(c), is constitutional.

For these reasons, the order of the circuit court of McHenry County is affirmed, and the cause is remanded for further proceedings.

Affirmed and remanded.

BOWMAN, P.J., and GALASSO, J., concur.